UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| HAMLET LOPEZ,         : | |
|       Petitioner,    : | |
|                : | |
| v.                                 : | C.A. No. 13-451S |
|                : | |
| ASHBEL T. WALL, II,      : | |
|       Respondent.   : | |

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

    *Pro se* Petitioner Hamlet Lopez ("Lopez") has filed a Petition for Writ of Habeas Corpus challenging his state murder conviction for the brutal stabbing of his ex-girlfriend. He seeks remand for a new trial because incriminating DNA evidence was admitted at trial through the testimony of a DNA laboratory supervisor who did not perform or observe any of the testing. Respondent A.T. Wall, by and through the State of Rhode Island ("State"), has filed a Motion to Dismiss the Petition. Petitioner has not objected to the Motion and the Court has determined that no hearing is necessary. Because the Rhode Island Supreme Court's decision upholding the admission of this testimony is not contrary to and does not involve an unreasonable application of clearly established federal law, I recommend that the State's Motion (ECF No. 5) be GRANTED and that the Petition be dismissed with prejudice.

**I.    BACKGROUND**

    Lopez killed his ex-girlfriend by stabbing her forty times approximately two weeks after she ended their relationship. The gory details of the premeditated murder are recited fully in State v. Lopez, 45 A.3d 1 (R.I. 2012), and need not be repeated here, except for the relevant observations of Chief Justice Suttell, who wrote that the evidence at trial was "gruesome" and "overwhelmingly support[ed]" Lopez's guilt. Id. at 26-27. By way of example only, Petitioner's

own son testified that his father called him on the night of the murder and admitted, "I killed my girlfriend." Id. at 8.

The focus of the Petition is the trial testimony of Matthew Quartaro, the State's DNA expert witness. A supervisor at an accredited DNA laboratory, Quartaro had analyzed DNA evidence collected by the State during the criminal investigation, including knives found at the murder scene and Petitioner's blood-stained clothing. At trial, he testified that he supervises the work of a team of DNA analysts who perform different stages of the testing, with accuracy assured by standard protocols that are widely accepted in the scientific community. Id. at 10. In Petitioner's case, Quartaro directed specific lab analysts whom he had trained to perform each stage of the testing; he did not personally perform any of the testing, touch any of the samples or stand over the analysts as they did their work. Despite this, he testified that he had been "involved in the entire process" by other means. Id. at 11. He reviewed the entire case file and confirmed that all protocols were followed. He also personally examined the analysts' notes and all the raw data, from which he made his own conclusions, and memorialized those findings by independently drafting a report. Based on this work, Quartaro opined within a reasonable degree of scientific certainty that one of the knives found at the scene was the murder weapon and that the blood on Petitioner's clothing belonged to the victim, thereby linking Petitioner to the murder. Id.

At the conclusion of the trial, the jury convicted Petitioner of first degree murder and the Rhode Island Superior Court sentenced him to life imprisonment without the possibility of parole. Petitioner appealed to the Rhode Island Supreme Court, which affirmed his judgment of conviction on June 22, 2012. Pursuant to 28 U.S.C. § 2254, Petitioner timely filed a Petition for Writ of Habeas Corpus in this Court on June 17, 2013. See 28 U.S.C. § 2244(d)(1).

## II.     STANDARD OF REVIEW

Habeas relief "shall not be granted" unless a state court decision on the merits of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (internal citation and quotation marks omitted); see also Wetzel v. Lambert, 132 S. Ct. 1195, 1198 (2012). The Supreme Court has explained that "[i]f this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Habeas corpus guards against extreme malfunctions in the state criminal justice system and does not substitute for ordinary error correction through appeal. Ferrell v. Wall, 862 F. Supp. 2d 88, 99 (D.R.I. 2012). The limited application of federal habeas relief "ensure[s] that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012).

## III.     DISCUSSION

Lopez challenges a single issue out of the many addressed by the Rhode Island Supreme Court in its affirmance of his conviction: that the admission of DNA evidence at his trial "through a lab supervisor, who never touched the DNA evidence, never performed any part of the testing on the evidence, and was never physically present when any of the testing was being conducted" was impermissible under the Sixth Amendment. Petition, ECF No. 1, at 5. Relying on Bullcoming v. New Mexico, 131 S. Ct. 2705 (2011), Petitioner argued before the Rhode Island Supreme Court that his Sixth Amendment right to confront his accusers was violated

3

because Quartaro was a mere "surrogate witness" and an insufficient substitute for the analysts who actually performed the DNA testing. See Bullcoming, 131 S. Ct. at 2715 (Sixth Amendment violated when surrogate witness testified about testing results and "could not convey what [lab analyst who performed the test] knew or observed about . . . the particular test and testing process he employed"). According to Petitioner, Quartaro was incapable of ferreting out fraudulent or faulty work performed by the analysts, and the Sixth Amendment requires that Petitioner be able to confront the analysts directly.

In a thoughtful and well-reasoned opinion, the Rhode Island Supreme Court rejected Petitioner's Bullcoming argument, finding that Quartaro performed the critical stage of the DNA analysis by drafting the report and had personal knowledge of the lab analysts' procedures. The Rhode Island Supreme Court began its analysis by distinguishing the facts of Petitioner's case from Bullcoming. In Bullcoming, 131 S. Ct. at 2709, the testifying witness had no connection to the scientific report about which he testified aside from familiarity with the testing laboratory's procedures. Id. at 2722 (Sotomayor, J., concurring). By contrast, in Petitioner's case, the Rhode Island Supreme Court observed that Quartaro was integrally involved in the entire process of testing, analysis and certification. Quartaro was the supervisor, reviewed the entire case file, confirmed that all protocols were followed, checked the testing results, and then independently analyzed all the raw data to formulate his own expert opinion and write his own report. The Rhode Island Supreme Court concluded that "Quartaro was the preeminent testifying witness. He testified as to his own conclusions; he did not act as a conduit of the opinions of, or parrot the data produced by, other analysts." Lopez, 45 A.3d at 14. He was exactly what the United States Supreme Court deemed necessary at trial in Bullcoming: "the analysts who write reports that the prosecution introduces must be made available for confrontation even if they possess the

4

scientific acumen of Mme. Curie and the veracity of Mother Teresa." Bullcoming, 131 S. Ct. at 2715 (internal citation omitted). Thus, Petitioner had ample opportunity to cross-examine regarding the DNA conclusions including to explore potential fraud by the analysts who did the tests.

The Rhode Island Supreme Court remained mindful that all stages of DNA testing and analysis are susceptible to error and falsification, but observed that the United States Supreme Court has made clear that the Confrontation Clause does not mandate "that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." Lopez, 45 A.3d at 16 (quoting Melendez–Diaz v. Massachusetts, 129 S. Ct. 2527, 2532 n.1 (2009)). The fact that Quartaro used data produced by other analysts does not bestow on Petitioner the constitutional right to confront each and every one of Quartaro's subordinates. Id.

The cases addressing the issue since Bullcoming are consistent with the Rhode Island Supreme Court's conclusion. The First Circuit has made clear that when "an expert witness employs her training and experience to forge an independent conclusion, albeit on the basis of inadmissible evidence, the likelihood of a Sixth Amendment infraction is minimal." United States v. Ramos-Gonzalez, 664 F.3d 1, 5 (1st Cir. 2011). The United States Supreme Court's post-Bullcoming opinion not only affirms that there is no constitutional deprivation with a witness like Quartaro, but emphasizes the important policy reasons to permit DNA testimony to be presented without the need to produce as witnesses the entire team who participated in the testing. Williams v. Illinois, 132 S. Ct. 2221, 2228 (2012) (plurality op.) (if DNA profiles could not be introduced without calling technicians who participated in testing, economic pressure would discourage reliance on DNA testing in favor of older, less reliable, forms of evidence); see

United States v. Soto, 720 F.3d 51, 59-60 (1st Cir. 2013) (no Sixth Amendment violation when expert conducts an independent examination and testifies to his own results).  The Rhode Island Supreme Court's reasoning is further buttressed by the post-Bullcoming cases from other jurisdictions, which hold that testimony from the laboratory supervisor does not run afoul of the Sixth Amendment as long as the supervisor independently reviews scientific data and draws his or her own conclusions at trial.  See, e.g., United States v. Summers, 666 F.3d 192 (4th Cir. 2011); Marshall v. People, 2013 CO 51, 2013 WL 3335095 (Colo. July 1, 2013); Jenkins v. State, 102 So. 3d 1063 (Miss. 2012); People v. Nelson, 2013 IL App (1st) 102619 (Ill. App. Ct. July 12, 2013); Commonwealth v. Yohe, 39 A.3d 381 (Pa. Super. Ct. 2012).

      With an avalanche of authority supporting the Rhode Island Supreme Court's reasoning, there can be little doubt that fair-minded jurists would agree – and I so find – that the Rhode Island Supreme Court's thorough treatment of Petitioner's Bullcoming argument leads ineluctably to the conclusion that it is not "contrary to" or "involve an unreasonable application of clearly established federal law."  See 28 U.S.C. § 2254(d)(1); Harrington, 131 S. Ct. at 786.  I therefore decline the invitation to intrude on the Rhode Island state court legal system and recommend that this Court dismiss the Petition with prejudice.  28 U.S.C. § 2254(d)(1); Martinez, 132 S. Ct. at 1316.

      An aside: the facts described in the Rhode Island Supreme Court's decision demonstrate that, apart from the DNA evidence challenged by Petitioner, the evidence of Petitioner's guilt was overwhelming.  Lopez, 45 A.3d at 5-9.  Accordingly, even if Petitioner's Sixth Amendment rights were violated by Quartaro's testimony, the Petition should still be dismissed because the error was harmless.  See Pettiway v. Vose, 100 F.3d 198, 201-03 (1st Cir. 1996) (limitation of

right to cross-examine victim did not have substantial and injurious effect because other evidence in case so overpowering).

## IV. CONCLUSION

I recommend that the State's Motion (ECF No. 5) be GRANTED and the Petition be dismissed with prejudice. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days after the date of service. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
October 8, 2013